JUDITH L. BRAMLAGE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bramlage v. Commissioner
Docket No. 26004-84.
United States Tax Court
T.C. Memo 1985-621; 1985 Tax Ct. Memo LEXIS 10; 51 T.C.M. (CCH) 150; T.C.M. (RIA) 85621; December 23, 1985. John W. Thyson, on behalf of petitioner. Christopher Kane, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION [1]
RAUM, Judge: The Commissioner determined a deficiency in petitioner's 1981 income tax in the amount of $1,994. The parties have stipulated that "[t]he only remaining issue in this case is whether [petitioner's] use of a computer in her home [in 1981] constituted the carrying on of a trade or business within the meaning of section 162 [I.R.C. 1954]". The answer to this question will determine the deductibility *11 of $3,523 of "business expenses" [2] claimed on Schedule C of petitioner's 1981 income tax return as well as the correctness of a $335 investment credit. The Commissioner's $1,994 deficiency determination was based on the disallowance of the foregoing items as well as on the disallowance of other deductions unrelated to Schedule C. The petition filed herein stated that the amount of deficiency disputed is $507, and that amount would appear to be further reduced by reason of petitioner's concession in the stipulation of facts herein of the disallowance of a portion of the claimed Schedule C deductions in addition to her concession in respect of the disallowance of other deductions unrelated to Schedule C. *12 Petitioner has been engaged professionally in computer activities for some 15 years, and has attained considerable expertise in the field. At all times relevant to this proceeding she has been employed by Computer Sciences Corporation (Computer Sciences or the corporation). During 1981 and at least since then her position was that of a Senior Computer Scientist. The corporation appears to have a significant role nationally in the computer industry and is involved in designing and working out major projects for its clients. It was characterized by petitioner as "the largest software house in the world". Its clients are generally Government departments or agencies and large business organizations; it is not ordinarily concerned with the problems of small businesses. As a Senior Computer Scientist petitioner translates ideas that her employer's clients have for the use of a computer into "a set of requirements, then translate[s] the requirements into a design, the design into code, [and then] test[s], evaluate[s], and deliver[s]" -- a series of functions that can be described in the aggregate as "software engineering". She is a generalist, a person who is competent *13 to perform functions at any point in the development of software. As such her employer tends to use her as a trouble shooter. Petitioner is employed by Computer Sciences on a full-time basis, generally working 40 hours a week, from 8:30 a.m. to 5:30 p.m. daily. However, she makes herself available to her employer for substantially longer workdays (often consuming almost all her waking hours) when a problem arises that requires her personal attention. Her compensation from the corporation in 1981 was $32,310.72. Petitioner's brother, Richard Flamer, is a small businessman who conducts a mail order used book business. In 1978 petitioner began discussions with him about the possibility or desirability of using a computer in his business. It was thought that a suitable computer with appropriately designed software could maintain and integrate three important aspects of his business: (1) a mailing list of his customers, presumably with notations indicating their areas of interest, (2) a record of his inventory, and (3) a list of details or descriptive materials with respect to the various items of his inventory. By tying these elements together such a computer could selectively *14 prepare promotional communications for distribution to the customers tailored to the separate interests of each such customer or group of customers. Finally, a computer could be useful to Flamer by providing data for the pricing of his inventory through access to a central data base maintained in a distant city that furnishes to booksellers generally recent auction prices of books. Flamer was interested in obtaining the use of such a computer. Petitioner's discussions and planning with him continued from 1978 into 1979 when, in August of 1979, she purchased a "Heathkit" -- an unassembled kit of computer components that must be put together. She spent some four or five months building the computer, which was completed about January, 1980. After assembling the hardware, she translated Flamer's needs into a requirements document, and converted his mailing list data. She has also been shopping for and tailoring software for him, shopping for additional hardware (which she purchased in 1982 or 1983), updating his mailing list, further defining his needs in connection with collecting inventory data, and writing an instruction manual. In November of 1983 petitioner delivered to Flamer *15 a modem and a terminal. These pieces of equipment have since then been used by him to gain access to inventory pricing information from a data base called "Bookline". Since November of 1983 Flamer has been renting from petitioner the equipment thus supplied by her for $25 a month. Prior to that time she received nothing from him for her work or use of the computer. Petitioner's activities in respect of the Flamer project were carried on in her spare time (evenings, weekends, etc.). She continued to work full time for Computer Sciences throughout the entire period of years from 1978 at least until the present, and does not appear to have any firm plans or intention to cease being thus employed, at least for the foreseeable future. As of the time of trial, in May 1985, petitioner had not yet completed the Flamer project. Petitioner kept no records of the number of hours she used the computer during the tax year 1981 or the purposes for which she used it. At least some portion of that use was for her personal benefit, such as maintaining data with respect to her own taxes. She claims to have spent approximately 18 hours a week on the project during most of 1981. Part of that *16 time was spent in preparing a manual for use of the computer. At some undisclosed point during their business relations, petitioner and her brother orally agreed on the general terms of her compensation, which, however, apart from the $25 a month beginning in November 1983, was not to start until petitioner completed the entire project and delivered all the equipment to him. That time had not yet been reached when this case was tried in May 1985. There is no indication in the record that petitioner expected to realize any profit from the Flamer project. Indeed, it appears that she expected at most to be reimbursed for her costs. At no point since petitioner began discussing the project with her brother did she seek business or professional advice with respect to the project except in connection with tax preparation. Neither did she investigate the salability of her software nor attempt otherwise to market the project. However, she did have in mind an ultimate goal of obtaining customers, particularly dealers in books, whom she could service in her spare time. Indeed, there was even the possibility that at some point, such activities might become sufficiently profitable so *17 as to warrant her leaving Computer Sciences and conducting her own business on a full-time basis. It is because of such possibility that petitioner has claimed that her part-time activities in 1981 in connection with her brother's project qualified as the conduct of a trade or business. The question is one that is largely factual, and we are not convinced that petitioner has carried her burden of proof. To the extent that petitioner's activities related to her brother's book business -- and that's all that was involved during the years 1978 through 1985 at least up to the time of trial -- such activities could hardly be characterized as undertaken for profit. The record is clear in this respect, and if all that were involved here was the Flamer project itself we would have no hesitancy in finding that petitioner's activities in question did not constitute the carrying on of a trade or business, certainly not in 1981, the year before us. More troublesome, however, is petitioner's contention that she had in mind or hoped to be able to obtain other clients or customers whose projects would be profitable to her. We were nevertheless left with serious doubts as to the nature of *18 such expectations. They appeared to us to be altogether too elusive, and related at best only to some vague future time. During 1981 -- and for that matter up until the time of trial -- petitioner did not actively seek any other clients, by advertising, word of mouth, or otherwise. To be sure, she had an explanation for failing to seek clients -- i.e., that she wanted to be able to show them the completed job that she had done for her brother. But we were unpersuaded. She was a Senior Scientist with a distinguished corporation doing high level work on projects that were plainly of a considerably higher order of complexity than would be presented by the average small businessman to whom she might expect to target her services. Her status and experience alone could have been a strong attraction for small businessmen whose computer needs could easily have been regarded as those of a considerably lower order than those of the clients of Computer Sciences serviced by petitioner. In such circumstances, it would seem that if she were seriously engaged in her alleged part-time business she would have made some effort, even on a tentative or exploratory basis, to make contact with some *19 potential paying customers. Furthermore, petitioner's activities had few, if any, of the trappings of a business then being carried on in 1981.There was no systematic maintenance of records; no holding out to the public or even a small segment of the public; no gross receipts from her activities up to late in 1983; and even then no gain, nor did she expect any at that time. Whatever her uncrystallized hopes might have been as to some remote future time, her activities in 1981 did not then, in our judgment, rise to the level of carrying on a trade or business. We so find as a fact. Decision will be entered for the respondent.
Footnotes
1. For convenience, the findings of fact and opinion are combined herein.↩
2. The major component of those "business expenses" was a claimed depreciation deduction of $1,963 in respect of petitioner's computer. However, the deduction for depreciation is governed by section 167. In view of the fact that the same "trade or business" requirement appears in both sections 162 and 167, we will likewise adopt the same "expense" terminology in this opinion to refer to both expenses and depreciation. The availability of the investment credit in dispute will follow automatically from the disposition of the "trade or business" issue.↩